# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1897.

---

### COWART *v.* EPSTEIN & BROTHER.

101   1
112   853

1. Where upon the trial of a claim case there is no evidence that the defendant in execution was ever in possession of the property levied upon, after the date of the judgment, a deed executed before that date can not be impeached by proof of the naked fact that the grantee was the brother of the grantor; and especially is this true where, according to the uncontradicted evidence of the former, the transaction was in all respects fair, upon a full consideration, and otherwise free from fraud. Nor does the mere pendency of the action upon which the judgment was afterwards rendered alter the case, where that fact was unknown to the grantee at the time he took the title.
2. There was no evidence to support the verdict, and the court erred in refusing a new trial.

Argued January 21, — Decided March 5, 1897.

Levy and claim. Before Judge Gamble. Tattnall superior court. April term, 1896.

Fi. fas. in favor of Epstein & Brother, Ferst's Sons & Co., and Joseph Weed, based on judgments against Moring & Cowart, of July 7, 1893, and April 9, 1894, were levied on realty in the town of Collins, as the property of W. H. Cowart, one of the defendants in fi. fa. Claims were interposed by D. C. Cowart. The property was found subject. Claimant's motion for a new trial, on the general grounds alone, was overruled, and he excepted.

In addition to said executions and levies, appeared in evidence a fi. fa. of Springer & Co. against the same defendants, based on a judgment of July 7, 1893; also, deed of F. M. Williams, dated January 2, 1892, to W. H. Cowart, conveying the premises in dispute.

Claimant introduced deed from W. H. Cowart to him, dated July 2, 1893, conveying said property; and testified: In June, 1893, W. H. Cowart, my brother, was owing me $237 for borrowed money and store account, and came to me to borrow some more money. I told him he was owing me this amount then, and I could not let him have it. He then proposed to sell me the property levied on, and I finally agreed to buy the place and give him $800 for it. I paid him part of it then, and the balance along until the deed was made. I paid him the full $800, which was as much as the place was worth. I did not know when I bought the place that W. H. Cowart owed a dollar, except what he owed me, and knew nothing about any suits pending against him until some six months afterwards. The trade was made in good faith; and if he sold this property to defraud his creditors, I had no knowledge of it. He had sold out his interest in the store to Moring, who was to pay all the indebtedness of Moring & Cowart; and Moring was considered gilt-edge then. I took possession of the place as soon as I bought it, and have rented it ever since and collected the rents. W. H. Cowart never rented the premises, except by my consent. I told him, if he saw a chance to rent it to a good man, to do so. I lived at Ohoopee; he was at Collins, and I got him to look after it for me. I don't remember that I paid him any money right at the time the deed was signed. I was at Collins that day, but don't remember whether I was present when the deed was signed. That (looking at paper exhibited) looks like W. H. Cowart's signature. W. H. Cowart delivered the deed to me. If he signed that contract for rent to Yarbrough, he had no right to do it. He had no right to rent the place but by my permission.

J. H. Williams testified, that he signed as a witness the deed from W. H. to D. C. Cowart; did not remember seeing

D. C. Cowart present when the deed was signed, nor know whether or not he was at Collins that day. The tax-books for 1893 showed that W. H. Cowart gave in the property levied on at $800, and other property, aggregating in all $1,192. Tax-books for 1894 showed that W. H. Cowart gave in about $95 worth of property. Tax-books for 1895 showed that he returned only $25 worth of property. Justice court summons in case of W. E. Springer & Co. v. W. T. Moring and W. H. Cowart, dated 22d day of June, 1893, showed an entry of personal service on W. H. Cowart, dated June 26, 1893. Justice court summons in case of M. Ferst's Sons & Co. v. W. T. Moring and W. H. Cowart, dated June 19, 1893, was served personally on W. H. Cowart, June 26, 1893. Justice court summons in case of Joseph D. Weed & Co. v. Moring & Cowart, dated June 19, 1893, was served personally on W. H. Cowart, June 26, 1893. Declaration in case of I. Epstein & Bro. v. Moring & Cowart, was filed in office on September 8, 1893, and served on W. H. Cowart by leaving copy at his most notorious place of abode, September 18, 1893.

*Lee & Giles*, by *James K. Hines*, for plaintiff in error.

LITTLE, J. Certain executions against the firm of Moring & Cowart were levied on two town lots as the property of W. H. Cowart, a member of the firm. Claims were interposed by D. C. Cowart. The cases were tried together, and the verdict rendered found the property subject. A motion for a new trial was made on the ground that there was no evidence to support the verdict.

After the executions were put in evidence, the plaintiffs introduced a deed, dated January 2d, 1892, conveying the land to W. H. Cowart. The judgments against the firm of Moring & Cowart, on which the executions levied on the land had issued, were rendered, respectively, July 7th, 1893, and April 9th, 1894. The claimant D. C. Cowart introduced a deed conveying the property levied on, by W. H. Cowart to himself, dated July 2d, 1893; and testified to the good faith of the transaction, the payment of the purchase-money, ignorance of the claimant as to insolvency of the firm at the time of the deed to him, and possession by himself under the deed.

If the conveyance of the property to the claimant was made to hinder, delay or defraud his creditors, by the defendant in execution, and such intent was known to the claimant, the conveyance of course is void, and being so, the property would be subject. It is true that the bona fides of the transaction is a question for the jury ; but it must be remembered that though fraud is subtle and slight circumstances may be sufficient to show its existence, it is not to be presumed. Civil Code, § 4029.

In the case before us, plaintiffs showed various suits for small amounts pending against the defendant just prior to the date of the conveyance to the claimant; also the tax returns for 1893, as well as the record of suits and judgments subsequently brought and rendered against W. H. Cowart, the defendant in fi. fa.; also an undated agreement made by him to rent the premises, to begin November 15th, 1893. Per contra is the evidence of the claimant, who, so far as the record shows, is a credible witness. His testimony is full and to the point on the question of good faith of the transaction, payment of the consideration, adequacy of the price, and want of knowledge of the insolvency of his grantor.

The circumstance of the undated agreement signed by defendant in fi. fa. loses its force against the bona fides of the claim, by absence of the date at which it was made. The return for taxation may have antedated the conveyance to the claimant. These circumstances, with the record of the suits, are not sufficient to taint the deed with fraud as against the evidence of the claimant. It may be that the conveyance was made to defraud the creditors of the grantor, but we can not say it is so, and, without more evidence, the verdict finding such to be the case, would seem to rest on presumption of that fact, rather than a sufficiency of the circumstances to carry conviction of the fact. We think the circumstances set out in the brief of evidence insufficient to support a verdict setting aside the deed. Hence the judgment, overruling the motion for new trial, is          *Reversed.   All the Justices concurring.*